No. 20-1750

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

JACQUELINE WATKINS,

Plaintiff-Appellant,

v.

CITY OF CHICAGO,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 17-cv-02028
The Honorable Edmond E. Chang, Presiding
_____

**BRIEF OF DEFENDANT-APPELLEE**
_____

CELIA MEZA
Acting Corporation Counsel
  of the City of Chicago
2 N. LaSalle Street, Suite 580
Chicago, Illinois 60602
(312) 742-0115

BENNA RUTH SOLOMON
  Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
  Chief Assistant Corporation Counsel
STEPHEN G. COLLINS
  Assistant Corporation Counsel
    Of Counsel

# TABLE OF CONTENTS

————

**Page**

**TABLE OF AUTHORITIES** ...........................................................................ii

**JURISDICTIONAL STATEMENT** ............................................................ 1

**ISSUES PRESENTED** ................................................................................. 1

**STATEMENT OF THE CASE** .................................................................... 2

**SUMMARY OF ARGUMENT** ................................................................... 11

**ARGUMENT** ................................................................................................ 12

**I.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
       JUDGMENT TO THE CITY ON OFFICER WATKINS' CLAIMS OF
       RACE AND GENDER DISCRIMINATION.** ............................... 13

    **A.    The CR Did Not Violate Title VII.** ..................................... 14

    **B.    Neither Race Nor Gender Caused Officer Watkins'
    Suspension.** ........................................................................... 20

**II.   THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
       JUDGMENT TO THE CITY ON OFFICER WATKINS' RETALIATION
       CLAIM.** ................................................................................................ 23

**CONCLUSION** ............................................................................................ 27

i

# TABLE OF AUTHORITIES

———

**CASES**                                                                **Page(s)**

Allen-Noll v. Madison Area Technical College,
    969 F.3d 343 (7th Cir. 2020)........................................................................ 12-13

Barbera v. Pearson Education, Inc.,
    906 F.3d 621 (7th Cir. 2018)........................................................................... 17

Collins v. American Red Cross,
    715 F.3d 994 (7th Cir. 2013)........................................................................... 23

Dandy v. United Parcel Service, Inc.,
    388 F.3d 263 (7th Cir. 2004)........................................................................... 18

David v. Board of Trustees of Community College District No. 508,
    846 F.3d 216 (7th Cir. 2017)........................................................................ 13-14

Gentry v. Duckworth,
    65 F.3d 555 (7th Cir. 1995)............................................................................. 27

Johnson v. Advocate Health & Hospitals Corp.,
    892 F.3d 887 (7th Cir. 2018)........................................................................... 13

Johnson v. Koppers, Inc.,
    726 F.3d 910 (7th Cir. 2013)........................................................................... 21

Khungar v. Access Community Health Network, No. 20-1958,
    985 F.3d 565 (7th Cir. 2021)........................................................................... 24

Lisle v. Welborn,
    933 F.3d 705 (7th Cir. 2019)........................................................................... 16

Madlock v. WEC Energy Group, Inc.,
    885 F.3d 465 (7th Cir. 2018)........................................................................... 14

McDonnell Douglas Corp v. Green,
    411 U.S. 792 (1973)....................................................................................... 13

Milligan v. Board of Trustees of Southern Illinois University,
    686 F.3d 378 (7th Cir. 2012)........................................................................... 26

Mollet v. City of Greenfield,
    926 F.3d 894 (7th Cir. 2019) .................................................................. 24

Nichols v. Southern Illinois University-Edwardsville,
    510 F.3d 772 (7th Cir. 2007) ............................................................. 14-15

Ortiz v. Werner Enterprises, Inc.,
    834 F.3d 760 (7th Cir. 2016) .................................................................. 13

Purtue v. Wisconsin Department of Corrections,
    963 F.3d 598 (7th Cir. 2020) .................................................................. 14

Robertson v. Department of Health Services,
    949 F.3d 371 (7th Cir. 2020) .................................................................. 26

**OTHER AUTHORITIES**

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1331 ........................................................................................... 1

28 U.S.C. § 1367(a) ...................................................................................... 1

42 U.S.C. § 1983 ........................................................................................... 1

42 U.S.C. § 2000e et seq. ............................................................................. 1

42 U.S.C.A. § 2000e-2(a)(1) ...................................................................... 13

# JURISDICTIONAL STATEMENT

————

The jurisdictional statement of plaintiff-appellant, Chicago police officer Jacqueline Watkins, is not complete and correct.

Officer Watkins' amended complaint asserted claims against the City of Chicago under 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and Illinois law.  R. 18 at 6-10.[1]  The district court had jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and it had supplemental jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1367(a).

The City filed a motion to dismiss the amended complaint, R. 24, which the district court granted in part by dismissing all claims except some under Title VII, R. 44 at 25.  The court later granted summary judgment to the City on the remaining Title VII claims, R. 120, and entered judgment for the City on March 26, 2020, R. 121.

Officer Watkins filed a notice of appeal on April 24, 2020.  R. 122.  This court has jurisdiction pursuant to 28 U.S.C. § 1291.

# ISSUES PRESENTED

————

1.     Whether the district court correctly granted summary judgment to the City on Officer Watkins' claims for race and gender discrimination, where she did not make out a prima facie showing of discrimination or otherwise present

---

[1] We cite district court filings as "R. __."  Where we cite a page number, we use the CM/ECF number at the top of the page.  Watkins' short appendix is not paginated; accordingly, we cite to the district court record even for documents in the short appendix.

circumstantial evidence that she was disciplined for discriminatory reasons.

      2.      Whether the district court correctly granted summary judgment to the City on Officer Watkins' claim that the City retaliated by suspending her one day, where there was no evidence that a retaliatory motive influenced the decisionmaker.

## STATEMENT OF THE CASE

———

Officer Watkins has been a Chicago police officer since 1999.  R. 90-4 at 7:3-10.  On September 9, 2008, she was on patrol duty with a partner, Harriet White, in the 22nd District.  R. 90-4 at 9:1, 9:20-24, 29:23-30:1.  They are both Black women.  R. 90-4 at 15:6-24.  Officer White drove their patrol vehicle while Officer Watkins rode in the passenger seat.  R. 90-4 at 30:12-16.  At around 11:35 that evening, R. 90-11 at 43, they were on their way to a gas station for a fill-up when they received a call over the radio concerning a burglary in progress, R. 90-4 at 34:5-8.  A burglary call was "priority one," which meant "[i]f you're available, respond."  R. 90-4 at 41:11-16.  Officers Watkins and White continued driving toward the gas station, in a direction away from the address of the reported burglary.  R. 90-4 at 55:16-20.

Sergeant Francis Higgins supervised Officers Watkins and White that evening.  R. 90-12 at 2 ¶ 4.  He also had received the burglary-in-progress call, and was driving toward the scene when he saw Officers Watkins and White driving in the opposite direction.  R. 90-12 at 3 ¶¶ 7, 10.  Sergeant Higgins then went on the radio to order them to turn around and follow him toward the burglary.  R. 90-11 at

2

43. Officers Watkins and White then went to the scene. R. 90-11 at 99. Later that evening, before the end of his shift, Sergeant Higgins initiated a complaint register ("CR") against Officers Watkins and White, R. 90-12 at 3 ¶ 13, and alleged that they drove away from the burglary despite having had ample opportunity to turn around and head toward the scene, R. 90-11 at 62. According to Sergeant Higgins, their conduct amounted to "[i]nattention to duty" and "[f]ailure to provide police service." R. 90-11 at 62. In the course of Sergeant Higgins' career with the Chicago Police Department, which spanned from 1981 to 2010, this was the only CR he filed against a Black or female officer. R. 90-12 at 2-3 ¶¶ 1, 6. Additionally, it was the only CR he initiated as the complainant. R. 90-12 at 4 ¶ 16.

On September 16, 2008, Sergeant Derrick Shinn was assigned to investigate the CR against Officers Watkins and White. R. 90-11 at 63. On September 25, 2008, Officer Watkins received notice of the CR. R. 90-11 at 80. She, in turn, submitted a memorandum on October 2, 2008 to the Assistant Deputy Superintendent of Police, stating that Sergeant Higgins falsely accused her. R. 90-11 at 58. She further stated that she responded to the burglary-in-progress call "immediately," and that Sergeant Higgins did not say she did anything wrong once she arrived at the scene. R. 90-11 at 58-59. Officer Watkins also accused Sergeant Higgins of discriminating against her and Officer White because they are Black women. R. 90-11 at 59.

Separately, Officer Watkins filled out a complaint form with the Illinois Department of Human Rights, in which she alleged that Sergeant Higgins initiated a CR and made a false allegation against her on the basis of her race and sex.

R. 90-16 at 7.  She dated the information sheet October 20, 2008.  R. 90-16 at 8.
According to Officer Watkins, an official with the Illinois Department of Human
Rights refused to accept her complaint and told her that she could not file a
complaint until she had received some form of discipline.  R. 90-4 at 140:17-24.

On October 10, 2008, Sergeant Shinn asked that the CR against Officer
Watkins be reassigned.  R. 90-11 at 56.  He explained that Officer Watkins had
made a discrimination complaint against Sergeant Higgins and that the "Internal
Affairs Division investigates all discrimination allegations."  R. 90-11 at 56.  The CR
was reassigned to Sergeant Jamie Kane on November 5, 2008.  R. 90-11 at 54.

Sergeant Kane investigated Sergeant Higgins' allegations against Officers
Watkins and White, as well as Officer Watkins' complaint that Sergeant Higgins
discriminated against her.  R. 90-11 at 42-46.  During an interview, Sergeant
Higgins told Sergeant Kane that he was driving toward the burglary when he saw
Officers Watkins and White driving in the opposite direction.  R. 90-11 at 89.  They
continued driving away from the burglary "for at least another block and a half."
R. 90-11 at 89.  Sergeant Higgins then went on the radio with instructions for them
to turn around and follow him.  R. 90-11 at 89.  According to him, the officers
arrived at the scene around four minutes after he did.  R. 90-11 at 90.

Sergeant Kane also interviewed Officer Watkins, who stated that when the
burglary-in-progress call went over the radio, she and Officer White were "[c]lear
from assignment" because they had just finished another job.  R. 90-11 at 98.  She
further stated that Sergeant Higgins used "a nasty tone" when he went on the radio
to order her and Officer White to turn around.  R. 90-11 at 99.  When the dispatcher

called their patrol vehicle with the address of the burglary, she and Officer White turned around "immediately" once "traffic was clear." R. 90-11 at 99. According to Officer Watkins, they arrived at the scene of the burglary "a few seconds, a minute or less" after they turned around. R. 90-11 at 100. Sergeant Kane interviewed Officer White as well, who stated that she turned around "immediately" after the dispatcher told them to, R. 90-11 at 109, and arrived "less than 30 seconds" later, R. 90-11 at 110.

Sergeant Kane conducted a separate interview with Officer Watkins regarding her complaint that Sergeant Higgins discriminated against her. R. 90-11 at 103-06. When asked why she thought Sergeant Higgins had discriminated based on race, she stated among other things that there were around five occasions when Sergeant Higgins told Black officers to "get your cousins" – referring to Black criminal suspects – or to "wake up." R. 90-11 at 105. She did not recall when or where Sergeant Higgins made those remarks. R. 90-11 at 105. According to Officer Watkins, Sergeant Higgins was "friends with all of the white officers." R. 90-11 at 105. If he had an issue with a white officer, "he would discuss it with them and not take it to [the] extreme and get a [CR] number against them." R. 90-11 at 104. Officer Watkins alleges that during the interview, Sergeant Kane told her she was "defaming [Sergeant Higgins'] reputation" by accusing him of discrimination. R. 90-4 at 93:17-18. That alleged remark does not appear on the interview transcript. R. 90-4 at 93:19-21; R. 90-11 at 103-06.

Sergeant Kane also listened to the radio transmissions from the evening of the burglary-in-progress call. R. 90-11 at 43-44. At 11:35 p.m., the dispatcher made

a call to "beat 2221," which was not the patrol car in the 22nd District that Officers Watkins and White rode that night. R. 90-11 at 43. Officers Watkins and White were beat 2222. R. 90-11 at 43. When beat 2221 answered the call over the radio, the dispatcher stated to "Units in 22, and on City wide," that there was a burglary in progress. R. 90-11 at 43. The dispatcher gave the address of the burglary and information about the suspects. R. 90-11 at 43. Beat 2221 answered, "10-4." R. 90-11 at 43. Then, at 11:36:20, Sergeant Higgins went on the radio to say, "Tell 2222 to turn around and head with me to that burglary in progress." R. 90-11 at 43. The dispatcher called for beat 2222. R. 90-11 at 43. Sergeant Kane reported that she heard "a pause with no response from 2222." R. 90-11 at 43-44. The dispatcher asked, "do you copy 2222?" and beat 2222 acknowledged the call. R. 90-11 at 44.

Upon concluding her investigation, Sergeant Kane issued a summary report stating her findings. R. 90-11 at 42-48. In general, a charge could result in any of four potential findings. A "sustained" finding "meant there was sufficient evidence to substantiate the allegation that the accused member violated" a rule. R. 90-11 at 4 ¶ 11. "Not sustained" meant there was insufficient evidence to determine whether the alleged misconduct occurred." R. 90-11 at 4 ¶ 11. A finding of "unfounded" "meant the evidence showed the alleged misconduct likely did not occur." R. 90-11 at 4 ¶ 11. And finally, "exonerated" "meant the conduct occurred but that the accused member's actions were within the [Chicago Police Department] Rules and Regulations. R. 90-11 at 4 ¶ 11.

Here, Sergeant Kane found that the charges against Officers Watkins and White for "[i]nattention to duty," in violation of Chicago Police Department Rule 10,

were sustained.  R. 90-11 at 47.  According to Sergeant Kane, the officers "waited to be specifically dispatched to a call that warrants immediate response."  R. 90-11 at 46.  She recommended a two-day suspension for Officer Watkins and a one-day suspension for Officer White.  R. 90-11 at 48.  Sergeant Kane also stated that she "did not find sufficient cause to serve" Sergeant Higgins with an allegation that he discriminated against Officers Watkins and White because of their race.  R. 90-11 at 46.

After Sergeant Kane completed her investigation, a process called Command Channel Review began.  R. 90-11 at 4 ¶ 12, 7 ¶ 21.  That step involved a review of all the evidence the investigator relied on, her report, and the underlying complaint.  R. 90-11 at 4 ¶ 13.  Each reviewer had the option to either agree or disagree with the investigator's findings and disciplinary recommendation.  R. 90-11 at 4 ¶ 14.

In the case of Officers Watkins and White, a group of three Command Channel Reviewers disagreed with Sergeant Kane's findings and recommendations.  R. 90-11 at 30-32, 36-39.  One reviewer, Deputy Chief Dana Alexander, opined that the burglary-in-progress was initially assigned to a different patrol vehicle.  R. 90-11 at 30.  When Sergeant Higgins later ordered Officers Watkins and White to turn around and follow him, the officers "made a u-turn as soon as it was safe to do so and proceeded to the scene."  R. 90-11 at 31.  Deputy Chief Alexander also stated that he "d[id] not hear the alleged delay in response by the accused officers" that Sergeant Kane reported hearing in the radio transmissions from that evening.  R. 90-11 at 31.  Deputy Chief Alexander also noted the statements by Officers Watkins and White that they arrived at the scene immediately after Sergeant

7

Higgins.  R. 90-11 at 31-32.  He recommended that the charges be classified as "Not Sustained."  R. 90-11 at 32.  Another Command Channel Reviewer, Chief Eugene Williams, adopted Alexander's position.  R. 90-11 at 30.  The third reviewer, First Deputy Superintendent Alfonsa Wysinger, recommended that the charges be deemed "not sustained" because "it is not proven by any objective witness statements that [Officers Watkins and White] did not respond."  R. 90-11 at 30.

After those reviewers submitted their recommendations, the matter went to Juan Rivera, the Chief of the Internal Affairs Division.  R. 90-11 at 2 ¶ 2, 8 ¶ 22. Like the three Command Channel Reviewers before him, Chief Rivera reviewed the investigative file before reaching a decision.  R. 90-11 at 8 ¶ 22.  Upon completing his review, Chief Rivera determined that he agreed with Sergeant Kane's finding that the charges were sustained.  R. 90-11 at 8 ¶ 22.  Chief Rivera explained that the burglary-in-progress call was a "priority one call," which meant that "all available officers have a duty to respond as quickly as possible to protect the community and to back up their fellow officers."  R. 90-11 at 8 ¶ 22.  Officers Watkins and White had just cleared a different assignment and had not informed the dispatcher that they were otherwise unavailable.  R. 90-11 at 8 ¶ 22.  So according to Chief Rivera, the officers were available, and thus "should have responded immediately," when the burglary-in-progress call first went over the radio.  R. 90-11 at 8 ¶ 22.  Chief Rivera recommended a one-day suspension for Officer Watkins and a reprimand for Officer White.  R. 90-11 at 9 ¶ 25, 39.  He was the last person to review a disciplinary matter before it went to the Superintendent for a final decision.  R. 90-11 at 5 ¶ 15.

On February 28, 2014, Superintendent Garry McCarthy accepted the findings that Chief Rivera recommended, and suspended Officer Watkins for one day. R. 90-11 at 9 ¶ 30. She received a suspension notification explaining that she violated the Chicago Police Department rule against inattention to duty, by "fail[ing] to properly respond to a priority one call of a 'Burglary in progress.'" R. 90-9 at 2. Watkins elected to serve her punishment by forfeiting a day's worth of compensatory time she had accumulated. R. 90-9 at 2. Separately, Officer White also received a one-day suspension, which she served by taking a day without pay. R. 90-11 at 39; R. 90-5 at 56:17-23.[2]

After Officer Watkins received her suspension, she returned to the Illinois Department of Human Rights and filed a discrimination charge on August 12, 2014. R. 18-1 at 2. She alleged discrimination based on her race and gender, as well as retaliation. R. 18-1 at 2-3. The Illinois Department of Human Rights conducted an investigation and found in the City's favor. R. 50 at 5 ¶ 15. Officer Watkins also challenged her suspension by pursuing her union's grievance process, and on December 30, 2015, an arbitrator ruled in her favor. R. 90-9 at 3-6. The arbitrator adopted the conclusion of the three Command Channel Reviewers, who had recommended that the charge against Officer Watkins be "not sustained." R. 90-9 at 6. The arbitrator ordered that the suspension be set aside and that Officer Watkins "be made whole for" the one day she was suspended. R. 90-9 at 6. The arbitrator further ordered that Officer Watkins' "record shall reflect that the

---

[2] At the time of Officer White's deposition in 2018, she went by the name of Harriet Davis. R. 90-5 at 2.

allegation was not sustained and that the one (1) day suspension is not a part of her record." R. 90-9 at 6. The City returned to Officer Watkins the day of compensatory time she had forfeited. R. 90-4 at 69:14-16. Officer Watkins confirmed that the City updated her record to show that the CR was "not sustained." R. 90-4 at 70:2-16. She also acknowledged that her record contained a total of 15 CRs, including this one. R. 90-4 at 70:8-9, 163.

After the arbitrator issued his ruling, Officer Watkins brought this suit. R. 1. On the City's motion, R. 24, the district court dismissed several of Officer Watkins' discrimination claims because she did not raise them in a charge with the Illinois Department of Human Relations, R. 44 at 14-21. The court also dismissed her Monell and breach-of-contract claims. R. 44 at 21-24. The court did not dismiss Officer Watkins' claims of race and gender discrimination stemming from the CR and the suspension, or a retaliation claim stemming from the suspension. R. 44 at 25.

The district court subsequently granted the City's motion for summary judgment on Officer Watkins' remaining claims. R. 120. With respect to her discrimination claims based on the CR, the district court assumed without deciding that equitable tolling excused Officer Watkins' failure to file a timely charge with the Illinois Department of Human Rights that the CR was discriminatory. R. 120 at 19-20. The court also declined to resolve whether initiating a CR constitutes an adverse employment action for purposes of Title VII. R. 120 at 20. The court granted summary judgment on the ground that Officer Watkins did not present evidence of similarly situated employees outside her protected classes who received

10

better treatment.  R. 120 at 20-22.  The court also determined that Sergeant Higgins' alleged discriminatory remarks did not create a genuine issue of material fact because there was no connection between those remarks and his decision to initiate a CR.  R. 120 at 23-24.

Additionally, the court granted summary judgment to the City on Officer Watkins' claims stemming from her one-day suspension.  R. 120 at 26-37.  With respect to the race and gender discrimination claims, the court explained that there was no evidence that the City gave better treatment to similarly situated officers who were not Black women.  R. 120 at 26.  Moreover, Officer Watkins could not avoid summary judgment by relying on evidence of Sergeant Higgins' alleged bias because he did not influence the ultimate decision to suspend her.  R. 120 at 26-27.  And finally, with respect to the retaliation claim, the court determined that evidence suggesting Sergeant Kane harbored a retaliatory motive did not create a genuine issue of material fact because she did not influence Superintendent McCarthy's decision to issue a one-day suspension.  R. 120 at 36.  Officer Watkins appeals.  R. 122.

## SUMMARY OF ARGUMENT
———

The district court correctly granted summary judgment to the City.  Officer Watkins cannot show that the CR against her violated Title VII because it was not an adverse employment action and, in addition, she did not identify similarly situated police officers outside her protected classes who received better treatment.  Nor do Sergeant Higgins' alleged stray remarks create a genuine issue whether he

initiated the CR for discriminatory reasons.

Officer Watkins' claims stemming from her one-day suspension fail as well. Here, too, she did not come forward with evidence that the City gave better treatment to similarly situated officers. Nor can Officer Watkins show that Sergeant Higgins' alleged animus had any effect on the Superintendent's decision to suspend her for one day.

And finally, the district court rightly decided that Officer Watkins could not establish that the suspension resulted from retaliation. Superintendent McCarthy was an unbiased decisionmaker, and no retaliatory motive influenced his decision to suspend Officer Watkins for a day.

## ARGUMENT

———

In the judgment of several members of the Chicago Police Department, Officers Watkins and White committed misconduct by driving away from the scene of a burglary in progress. The Superintendent agreed with that assessment and suspended both officers for one day. But there was healthy disagreement within the Department on the question whether Officers Watkins and White violated Police Department rules, and ultimately an arbitrator set aside the Superintendent's decision to suspend Officer Watkins. This shows that whether Officer Watkins committed misconduct presented a close call on which reasonable minds can differ. What Officer Watkins cannot show, however, is that the CR against her or the one-day suspension were motivated by reasons that violated Title VII. This court reviews a grant of summary judgment de novo, <u>Allen-Noll v. Madison Area</u>

Technical College, 969 F.3d 343, 349 (7th Cir. 2020), and the district court's decision to grant summary judgment to the City was correct.  In Part I we explain that summary judgment on the race and gender discrimination claims was proper, and in Part II we explain that the district court rightly granted summary judgment on Officer Watkins' retaliation claim as well.

## I.     THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO THE CITY ON OFFICER WATKINS' CLAIMS OF RACE AND GENDER DISCRIMINATION.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1).  On summary judgment, the question for the court is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016).

The framework of McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973), provides "one way of culling the relevant evidence." Johnson v. Advocate Health & Hospitals Corp., 892 F.3d 887, 894 (7th Cir. 2018).  Under McDonnell Douglas, a plaintiff must prove "that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." David v. Board of Trustees of Community

College District No. 508, 846 F.3d 216, 225 (7th Cir. 2017) (internal quotation marks omitted).  If a plaintiff carries that initial burden, "the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual."  Id. (internal quotation marks omitted).

At the same time, McDonnell-Douglas "is just one way that a plaintiff can navigate her way to a jury in a discrimination case."  Purtue v. Wisconsin Department of Corrections, 963 F.3d 598, 602 (7th Cir. 2020).  A plaintiff may instead rely on "other direct or circumstantial evidence that supports an inference of intentional discrimination."  Id. (internal quotation marks omitted).  Here, no matter the method of proof, a reasonable jury could not find in favor of Officer Watkins on her discrimination claims arising from the CR and subsequent one-day suspension.  We address each event in turn.

## A.     The CR Did Not Violate Title VII.

Officer Watkins cannot make a prima facie showing under McDonnell-Douglas that the CR against her violated Title VII, for two reasons.  First, Sergeant Higgins did not subject Officer Watkins to an "adverse employment action" when he initiated the CR.  "An adverse employment action is some quantitative or qualitative change in the terms or conditions of [the plaintiff's] employment that is more than a mere subjective preference."  Madlock v. WEC Energy Group, Inc., 885 F.3d 465, 470 (7th Cir. 2018) (internal quotation marks omitted).  "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action."  Nichols v. Southern

14

Illinois University-Edwardsville, 510 F.3d 772, 780 (7th Cir. 2007) (internal

quotation marks omitted).

Here, the district court granted summary judgment to the City without

deciding whether the CR was an adverse employment action. R. 120 at 20.[3]  But the

record shows that this was a basis for summary judgment.  Officer Watkins does not

claim that the CR caused a change to her compensation, job title, or professional

responsibilities.  Instead, she asserts that the CR prevented her from being

promoted.  E.g., Brief and Required Appendix of Plaintiff-Appellant, Jacqueline

Watkins ("Watkins Br.") 8.  But the evidence does not support that contention.  To

receive a promotion, Officer Watkins would have needed a commander to nominate

her.  R. 90-4 at 126:4-7.  In the event a commander nominates an officer, a Merit

Board assembles additional information about the nominee and submits a

nomination packet to the Superintendent, who has final discretion whether to

promote the officer.  R. 90-14 at 10-11.  Officer Watkins had no other way of

advancing to a higher rank, apart from receiving such a merit promotion.  R. 90-4 at

116:20-117:1.[4]

Officer Watkins cannot show that the CR stood in the way of a merit

promotion because she has no evidence that the CR had any influence on a

commander's decision whether to nominate her.  For instance, she adduced no

---

[3]  The court also assumed for purposes of summary judgment that equitable tolling
excused Officer Watkins' failure to file a timely charge regarding the CR at the
Illinois Department of Human Rights, R. 120 at 19-20, and we do the same.

[4]  Some promotions are based on an officer's score on a qualifying test, R. 90-10 at
¶¶ 4, 8, 10, but Officer Watkins acknowledges that she did not score well enough to
secure a promotion this way, R. 103 at 15 ¶ 62.

testimony from a commanding officer indicating that he or she would have nominated Officer Watkins if not for the CR.  Nor does she identify an example of an officer who did not get nominated because of a single CR.  Indeed, it is implausible that this particular CR impaired Officer Watkins' chance at a nomination, since her record contains fifteen CRs overall, including six that came after the one at issue here.  R. 90-4 at 163.

Instead of identifying evidence that the CR prevented a promotion, Officer Watkins speculates that if Sergeant Higgins had not initiated the CR, she "would have been at least a Deputy Chief by now."  Watkins Br. 32.  But "speculation and conjecture" are "not enough to survive summary judgment," Lisle v. Welborn, 933 F.3d 705, 720 (7th Cir. 2019), and Officer Watkins' baseless assumption about what her rank would be without this CR does not entitle her to a trial.  And notwithstanding that Officer Watkins uses quotation marks in saying "her promotional opportunities were indeed 'doomed,'" Watkins Br. 32, thus implying that someone used the word she put in quotation marks, it appears nowhere in the materials she cites.  See R. 103-6 at 68-71.  Absent any evidence that the CR had any effect on a potential nominator, Officer Watkins cannot show that the CR amounted to an adverse employment action.

Officer Watkins also argues that the CR prevented a promotion on the ground that a "Merit promotional opportunities directive" shows that a nominee's "disciplinary history is weighted and considered."  Watkins Br. 9.  She cites a Merit Board order stating that the board receives an officer's "disciplinary history as permitted by the relevant CBA" and adds it to the nomination packet that goes to

16

the Superintendent.  R. 103-3 at 77.  But that does not help Officer Watkins because she never received a nomination, and thus did not have occasion to appear before the Merit Board.  And in any event, she does not identify evidence that the "relevant CBA" provides that a CR, by itself, is part of an officer's "disciplinary history" for the Merit Board to provide to the Superintendent.[5]

And apart from whether the CR was an adverse employment action, Officer Watkins' evidence fails a second part of the McDonnell-Douglas framework as well: she has not showed that similarly situated officers outside her protected classes received better treatment.  Employees are similarly situated if they "deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them."  Barbera v. Pearson Education, Inc., 906 F.3d 621, 629 (7th Cir. 2018) (internal quotation marks omitted).  Thus, to show that the CR against her was discriminatory, Officer Watkins must do more than complain that Sergeant "Higgins had the option" not to initiate the CR against her.  Watkins Br. 37.  Rather, she would need to present evidence that Sergeant Higgins declined to initiate CRs against officers who engaged in similar conduct and who are not Black or female.

But she adduced no such evidence.  Instead, she cites documents purporting to show the outcome of CRs against white or male officers for neglect of duty.

---

[5]  Elsewhere, Officer Watkins alludes to a purported "Merit Board directive that 'complementary history and CR disciplinary history will be considered for all meritorious promotions.'"  Watkins Br. 32.  That language does not appear in the materials she cites.  See R. 90-14 at 9-11, R. 25-2 at 14.

Watkins Br. 10 (citing R. 103-4 at 12-15, 20-32). These records should be ignored because they come with a "disclaimer" that they do "not purport to be an accurate reflection of either the City's internal database or of its truthfulness." R. 103-4 at 42. And setting aside their unreliability, these records do not help Officer Watkins because they do not show that the officers listed had the "same supervisor" – Sergeant Higgins – as she did. They are also irrelevant because they pertain to the ultimate disposition of CRs, and not their initiation, as the district court explained. R. 120 at 22. In other words, Officer Watkins cannot show that Sergeant Higgins initiated her CR for discriminatory reasons by pointing to records showing how CRs against other officers were ultimately resolved.

And to the extent Officer Watkins tries to show race or gender discrimination by going outside the McDonell-Douglas framework, her claim fares no better. She alludes to racially derogatory remarks that Sergeant Higgins allegedly made at some unspecified times. Watkins Br. 38. "[S]tray remarks" can amount to evidence of discrimination "if they are sufficiently connected to the employment decision, i.e., made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision." Dandy v. United Parcel Service, Inc., 388 F.3d 263, 272 (7th Cir. 2004). Officer Watkins cannot connect Sergeant Higgins' alleged remarks to his CR against her because she has no recollection of when he supposedly said those things. R. 90-11 at 105. So there is no basis for finding that the comments were made "close in time" to when Sergeant Higgins initiated the CR in 2008. Moreover, the CR against Officers Watkins and White was the only one that Sergeant Higgins filed against Black or female officers in the

18

course of his 29-year career, R. 90-12 at 2-3 ¶¶ 1, 6, which further undercuts the notion that he initiated this CR for discriminatory reasons.

And contrary to Officer Watkins' assertion, Watkins Br. 20, she cannot prove discrimination by citing the fact that her allegation against Sergeant Higgins did not result in a separate CR. In fact, Officer Watkins does not explain what she thinks the significance of the Chicago Police Department's internal numbering system is. The record shows that Sergeant Kane investigated both Sergeant Higgins' accusations against Officers Watkins, as well as Officer Watkins' accusation against Sergeant Higgins, as part the same CR. And still, she kept these separate to the extent warranted. For example, Sergeant Kane conducted separate interviews with Officer Watkins to discuss each allegation individually and labeled both interviews with the same CR log number. R. 90-11 at 97-100 (charge against Officer Watkins), 103-06 (charge against Sergeant Higgins). So Officer Watkins' complaint against Sergeant Higgins received due consideration. It is of no moment that Sergeant Kane used the same CR log number to investigate all the allegations between Sergeant Higgins and Officer Watkins.

Officer Watkins also complains that the charge against her was initially phrased as "failed to respond" and later appeared as "failed to properly respond." E.g., Watkins Br. 16. This, too, is immaterial to whether the CR was discriminatory. At the outset of the CR, the Chicago Police Department sent Officer Watkins a notification of the charge, and included an allegation that she "failed to respond to a priority one call" by driving away from the location of the burglary. R. 90-11 at 77. Later, when Sergeant Kane completed her investigation, she

described the allegation as a "fail[ure] to properly respond," id. at 42, and explained that Officers Watkins and White drove away from the scene of the burglary until the dispatcher ordered them to turn around, id. at 46. Sergeant Kane also made clear that the officers later arrived at the scene. Id. Plainly, there was no dispute whether Officer Watkins responded at all; rather the issue all along was whether she properly responded. Thus, contrary to Officer Watkins' assertion, the basis for the accusation against her did not change. Rather, both records consistently alleged that she drove away from the scene of the burglary, thus triggering the CR.

For all these reasons, the CR against Officer Watkins did not violate Title VII.

## B. Neither Race Nor Gender Caused Officer Watkins' Suspension.

Officer Watkins also cannot show that the Superintendent's decision to suspend her resulted from race or gender discrimination. For purposes of summary judgment, we assume that a one-day suspension that an arbitrator later reversed constituted an adverse employment action. Nevertheless, as with Officer Watkins' discrimination claim stemming from the CR, she has not identified similarly situated officers who received better treatment. Here, she would need to present evidence that officers outside her protected classes engaged in similar conduct without receiving a suspension from Superintendent McCarthy. But rather than cite such evidence, she points to records bearing on the overall rates at which CRs against white or male officers for "neglect of duty" were sustained. Watkins Br. 11. These are the same records she cited to support the claims stemming from the initiation of her 2008 CR, and as we have explained, they should be ignored because

20

they are not reliable.

And even taken at face value, these records do not entitle Officer Watkins to a trial. To begin, they do not show that the listed officers had the "same supervisor" – here, Superintendent McCarthy. The records span from 1988 to 2019, R. 103-4 at 3, covering the tenures of many different superintendents. Moreover, the records do not show that the listed officers engaged in similar conduct by failing to properly respond to a priority one call. They also fail to show that the listed officers received better treatment – say, by receiving a punishment that is less than a one-day suspension. In fact, Officer Watkins notes that another officer who "failed to take action" was fired. Watkins Br. 9. If anything, that illustrates that another officer received worse treatment than she did – in other words, the opposite of what Officer Watkins needs to show.

This claim fails for other reasons as well. Officer Watkins does not suggest that the decisionmaker, Superintendent McCarthy, harbored any race or gender bias. And she cannot rely on Sergeant Higgins' alleged bias to prove that her suspension was discriminatory. Although a "cat's paw" theory may impose liability "when a biased subordinate who lacks decision-making power uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action," Johnson v. Koppers, Inc., 726 F.3d 910, 914 (7th Cir. 2013) (internal quotation marks omitted), that theory does not apply here. It "requires both evidence that the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased subordinate's scheme was the proximate cause of the adverse employment action."

21

Id. All Sergeant Higgins did was initiate the CR against Officers Watkins and White after personally observing them driving away from a burglary in progress. R. 90-12 at 3 ¶ 13. He did not make any finding or any recommendation about potential discipline. Rather, Sergeant Kane, as the Internal Affairs Division investigator, first recommended that Officer Watkins be suspended. R. 90-11 at 7 ¶ 20. Four other officers reviewed Sergeant Kane's recommendation and made their own findings, R. 90-11 at 7-8 ¶¶ 21-22, and then the Superintendent had final say on whether the charges were sustained, and if so, what punishment if any Officer Watkins received, id. at 5 ¶ 15. There is no evidence that Sergeant Higgins influenced the Superintendent's decision. Indeed, it is implausible that Sergeant Higgins had any effect at all, because he retired in 2010, R. 90-12 at 2 ¶ 1, and the Superintendent suspended Officer Watkins in 2014, R. 90-11 at 9 ¶ 30. In sum, no reasonable jury could find that race or gender discrimination caused Officer Watkins' one-day suspension.[6]

Officer Watkins also complains that the Superintendent's decision to suspend her came more than five years after Sergeant Higgins first accused her of misconduct. Watkins Br. 17. But she does not explain how the amount of time it took to investigate the CR suggests race or gender discrimination. And regardless, contrary to her assertion, the investigation of her CR did not violate the union

---

[6] Officer Watkins devotes a section of her brief to supposed discovery violations, Watkins Br. 13-15, but she does not substantiate those accusations with citations to the record. She cites Sergeant Higgins' declaration, id. at 14, and an exhibit to Chief Rivera's declaration, id. at 15, but those documents do not suggest that the City did anything improper. Officer Watkins also failed to raise any of these issues in the district court with a motion to compel, and thus they are waived on appeal, as well as meritless.

contract provision generally prohibiting "'a complaint or allegation of any misconduct . . . be[ing] made the subject of a Complaint Register investigation'" where the alleged misconduct took place more than five years before the Chicago Police Department learned of the complaint.  Id. at 17 (quoting R. 90-15 at 6).  Officer Watkins' alleged misconduct happened on September 9, 2008, and Sergeant Higgins initiated the CR the next day.  R. 90-11 at 62.

Elsewhere, Officer Watkins cites the disagreement among members of the Chicago Police Department whether she committed misconduct as evidence that the basis for her suspension was pretextual.  Watkins Br. 18.  This court need not consider pretext because Officer Watkins has not established a prima facie case of discrimination, as we have explained.  Moreover, there is no evidence of pretext, which for purposes of Title VII means "means a lie, specifically a phony reason for some action."  Collins v. American Red Cross, 715 F.3d 994, 1000 (7th Cir. 2013) (internal quotation marks omitted).  A difference in opinion among those who looked at Officer Watkins' case does not suggest that anyone was lying.  And contrary to her representation that the Command Channel Reviewers "f[ound] lies," Watkins Br. 18, none of them said anything to suggest that Sergeant Kane or Sergeant Higgins lied.  The record shows instead that different officers sincerely disagreed over whether Officer Watkins should have received discipline, and if so, how much.  That does not entitle Officer Watkins to a trial.

## II.     THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO THE CITY ON OFFICER WATKINS' RETALIATION CLAIM.

Officer Watkins cannot establish that the City suspended her in retaliation

for alleging that Sergeant Higgins discriminated against her.  To prove retaliation, a plaintiff "must adduce evidence to establish a causal link between [her] protected activity and the adverse action."  Khungar v. Access Community Health Network, 985 F.3d 565, 578 (7th Cir. 2021) (internal quotation marks omitted).  On summary judgment, the question for the court is whether the "record contain[s] sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the" adverse action.  Id. (internal quotation marks omitted).  A plaintiff must show that "the desire to retaliate was *the* but-for cause of the challenged employment action," which means that "the adverse action would not have happened without the [protected] activity."  Mollet v. City of Greenfield, 926 F.3d 894, 897 (7th Cir. 2019) (internal quotation marks omitted).

Officer Watkins cannot make that showing.  She does not allege that Superintendent McCarthy, who had final say over the investigatory findings and punishment, if any, had a retaliatory motive.  R. 103 at 19 ¶ 77.  She relies instead on evidence suggesting that Sergeant Kane, who investigated the CR for the Internal Affairs Division, might have intended to retaliate.  Watkins Br. 24-25.  According to Officer Watkins, Sergeant Kane accused her of "defaming [Sergeant Higgins'] reputation" by alleging he discriminated against her.  R. 90-4 at 93:18.  Additionally, Sergeant Kane recommended a two-day suspension for Officer Watkins, compared to one day for Officer White, R. 90-11 at 48, who did not accuse Sergeant Higgins of discrimination.  The district court stated that this was "just enough circumstantial evidence to permit a reasonable jury to infer a causal link between" Officer Watkins' protected activity and Sergeant Kane's decision to

recommend a suspension.  R. 120 at 29.

But as the district court correctly determined, there was not sufficient evidence for a reasonable jury to find that any retaliatory "motives actually worked their way up the chain of command" to influence the ultimate decision to suspend Officer Watkins.  R. 120 at 36.  So here too, any "cat's paw" theory fails.  As we have explained, after Sergeant Kane completed her investigation, four different officers reviewed the case and made their own recommendations before the matter went to Superintendent McCarthy.  R. 90-11 at 7-8 ¶¶ 21-22.  None of those reviewing officers agreed with Sergeant Kane's recommendation that Officer Watkins should be suspended for two days, although none went so far as to recommend findings of "unfounded" or "exonerated."  See R. 90-11 at 32.  And ultimately, Superintendent McCarthy suspended both Officer Watkins and Officer White for one day.  Id. at 32, 39.  So in the event Sergeant Kane evidenced a retaliatory motive by recommending an additional day of suspension for Officer Watkins, that motive had no effect on Superintendent McCarthy, who gave both officers the same discipline.  And Officer Watkins cannot show that her discrimination complaint was the but-for cause of her suspension, since Officer White was also suspended even though she did not make such a complaint of her own.

Officer Watkins also alleges that Chief Rivera harbored a retaliatory motive.  Watkins Br. 33.  According to Officer Watkins, Chief Rivera showed an intent to retaliate by supposedly "fail[ing] to conduct an investigation" before recommending that she receive a one-day suspension.  Watkins Br. 34.  That was not his assigned role in the Police Department's disciplinary process.  His role was to review the

investigation of others, and he stated in a declaration that he reviewed the evidence in Officer Watkins' investigative file before deciding what recommendation to make to Superintendent McCarthy.  R. 90-11 at 8 ¶ 22.  Officer Watkins offers nothing to contradict that.  Officer Watkins also does not explain how a supposed failure to investigate would be evidence that Chief Rivera sought to retaliate.  So this court should reject Officer Watkins' assertions concerning Chief Rivera's review of the investigatory file.[7]

Elsewhere, Officer Watkins asserts that the "untimeliness" of her suspension suggests retaliation.  Watkins Br. 22.  "[S]uspicious timing" can provide circumstantial evidence of retaliation, <u>Robertson v. Department of Health Services</u>, 949 F.3d 371, 379 (7th Cir. 2020), but Officer Watkins does not explain how the timing of her suspension was suspicious.  Indeed, whereas "temporal proximity" between a protected activity and an adverse action can support an inference of retaliation, <u>Milligan v. Board of Trustees of Southern Illinois University</u>, 686 F.3d 378, 390 (7th Cir. 2012), here Officer Watkins avers the opposite:  that a delay was suspicious.  But contrary to her assertion, the passage of time between Officer Watkins' complaint and her suspension does not suggest retaliation.

Finally, Officer Watkins alludes to several issues that are not properly before the court.  For example, she says that the City violated <u>Monell</u> and created a hostile

---

[7]  Without providing a case citation, Officer Watkins references "<u>Spalding et al[.] v. City of Chicago et al[.]</u>" for the proposition that Chief Rivera has a "history of retaliation against female Officers."  Watkins Br. 21.  And without any citations to the record, Officer Watkins attributes several statements to Chief Rivera by putting them in quotation marks.  This court should ignore these unsupported allegations against Chief Rivera.

work environment.  Watkins Br. 19, 27.  The district court granted the City's motion to dismiss those claims pursuant to Rule 12(b)(6), R. 44 at 18-19, 22-23, and Officer Watkins does not attempt to show that the district court erred.  "[A]rguments omitted from an opening brief are forfeited," Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995), and Officer Watkins has forfeited any argument that the district court erred by dismissing the Monell or hostile-environment claims.  Officer Watkins also refers to violations of the First, Fifth, and Fourteenth Amendments, Watkins Br. 19-20, but her amended complaint did not reference any of these provisions.  It did include a claim under section 1983, R. 18 at 9, but as the district court explained, Officer Watkins named only the City as a defendant and failed to plead a basis for municipal liability, R. 44 at 21-23.

## CONCLUSION

———

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

CELIA MEZA
  Acting Corporation Counsel

s/ Stephen G. Collins
BY:    STEPHEN G. COLLINS
Assistant Corporation Counsel
2 N. LaSalle Street, Suite 580
Chicago, Illinois 60602
(312) 742-0115
stephen.collins@cityofchicago.org

**CERTIFICATE OF COMPLIANCE**

_____

In accordance with Fed. R. App. P. 32(g)(1), I certify that the foregoing brief complies with the type-volume limitation provided by Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32(c).  This brief contains 7,522 words, beginning with the words "Jurisdictional Statement" and ending with the words "Respectfully submitted" in the Conclusion section, as recorded by the word count of the Microsoft Word word processing system used to prepare the brief.

s/ Stephen G. Collins
STEPHEN G. COLLINS, Attorney


**CERTIFICATE OF SERVICE**

_____

I certify that on February 19, 2021, I electronically filed the attached Brief of Defendant-Appellee with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participants:

Jacqueline A. Watkins
1727 W. 107th Street
Chicago, IL 60643


s/ Stephen G. Collins
STEPHEN G. COLLINS, Attorney