No. 20-1750

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Jacqueline Watkins
Plaintiff - Appellant,

v.

City of Chicago,
Defendant - Appellee.

Appeal from the United States District Court
Northern District of Illinois
Case No. 17-cv-02028
The Honorable Judge Edmond E. Chang

REPLY BRIEF OF
PLAINTIFF-APPELLLANT, JACQUELINE WATKINS

JACQUELINE WATKINS
*pro se*
Plaintiff-Appellant

1727 W. 107th Street
Chicago, IL 60643
(773) 562-0167

# APPELLANT REPLY BRIEF

## Table of Contents

TABLE OF CONTENTS...................................................................................1

TABLE OF AUTHORITIES...........................................................................2-3

INTRODUCTION.....................................................................................4-5

ARGUMENTS.........................................................................................5-22

   A. The City's claim that Watkins did not establish a Prima Facie Case of Discrimination, is erroneous.

   B. The District Court abused its discretion by denying Watkins' statistical facts and evidence to carry the burden of proof of disparity of treatment based on race and gender.

   C. The District Court erred by granting Summary Judgment as to Watkins' retaliation claim wherein the City increased penalty and suspended Watkins after Watkins submitted a Charge of Discrimination.

   D. The District Court provided its opinion, without explanation, that Watkins' arguments regarding her suspension and obtainment of the false and egregious CR was an Adverse Action that impeded on Watkins' career mobility, work reputation and promotional opportunities were meritless.

   E. The City shifting "non-discriminatory justifications" and seven-year timing regarding the closure of the CR is furtherance and proof of the City's inconsistency and pretext.

   F. The Court erred when it failed to view the findings and evidence of all investigative witnesses [Chain of Command, Sgt. Derrick Shinn & Fraternal Order Police Arbitrator George Roumell] that documented the egregious CR as pretext.

CONCLUSION.......................................................................................22-23

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)..........................23

PROOF OF SERVICE..................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1123 (7th Cir. 1994)*…………………….18

*Bellaver v. Quanex Corp., 200 F.3d 485, 493 (7th Cir. 2000)*……………………………….....6

*Brewer v. Bd. Of Trs. Of Univ. of Ill., 479 F.3d 908, 918 (7th Cir. 2007)*………………………20

*Burdine, 450 U.S. at 252-56*………………………………………………………………17

*Burlington Northern v. White, 126 S. Ct. 2405 (2006)*………………………………………14

*David v. Board of Trustees of Community College District No. 508, 846 F.3d 216, 225*
*(7$^{th}$Cir.2017)*…………………………………………………………………………....6

*Coleman v. Donahoe, 667 F.3d 835, 860 (7th Cir. 2012)*………………………………….10

*Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)*……………………………………..13

*Curry v. Menard, Inc., 270 F.3d 473 (7th Cir. 2001)*………………………………………18

*Deloughery v. City of Chicago, 422 F. 3d 611, 614 (7th Cir. 2005)*……………………………15

*DPS, State Police v. Rigby, 401 2d 1017 (1981)*……………………………………………17

*EEOC v. Indiana Bell Telephone Company, Inc. Ameritech Corporation, 256 F.3d 516*
*(7th Cir 2001)*……………………………………………………………………………17

*Fischer v. Avanade, Inc., 519 F.3d 393, 404 (7th Cir. 2008)*………………………………..13

*Foggey v. City of Chi., No. 16 CV 10963 (N.D. Ill. Jan. 13, 2020)*………………………….10

*Forrester v. Rauland-Borg Corp, 453 F.3d 416 (7th Cir. 2006)*……………………………18

*Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007)*……………………….6,18

*Khungar v. Access Community Health Network, 985 F.3d 565, 578 (7th Cir. 2021)*…………..11

*Lewis v. City of Chicago, 496 F.3d 645, 653 (7th Cir. 2007)*………………………………..13

*Magyar v. St. Joseph Regional Medical Center, 544 F.3d 766, 772 (7th Cir.2008)*……………16

*McDonnell Douglas, 411 U. S. at 802-804*…………………………………………….5,8,17

*Milligan v. Board of Trustees of Southern Illinois University, 686 F.3d 378, 388*
*(7th Cir. 2012)*…………………………………………………………………….10,11

*Mollet v. City of Greenfield, 926 F.3d 894, 897 (7th Cir. 2019)*……………………………………17

*Molnar v. Booth, 229 F.3d 593 (7th Cir. 2000)*……………………………………………………13

*Monell v. Dep't of Soc. Servs. of the City of New York, 426 U.S. 658 (1978)*…………………12

*Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016)*…………………………8

*O'Sullivan v. City of Chicago, 01 C 9856 (N.D. Ill. 2007)*………………………………………14

*Patterson v. Avery Dennison Corp., 281 F.3d 676, 679 (7th Cir. 2002)*………………………10

*Purtue v. Wisconsin Department of Corrections, 963 F.3d 598, 602 (7th Cir. 2020)*……………8

*Reeves, 530 U.S. at 153, 120 S. Ct. 2097*…………………………………………………………22

*Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133 (2000)*………………………………18,21

*Robinson V. Perales, 894 F.3d 818, 832 (7th Cir. 2018)*…………………………………………19

*Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712 (7th Cir. 2005)………………………………16

*Russell v. Acme-Evans Co., 51 F.3d 64, 69-70 (7th Cir. 1995)*…………………………………20

*Schnabel v. Abramson, 232 F, 3d 83, 90 (2d Cir. 2000) (quoting Reeves, 120 S. Ct. at 2106)*……………………………………………………………………………………………22

*Silverman v. Bd. Of Educ. Of City of Chicago, 637 F.3d 729, 734 (7th Cir. 2011)*……………11

*Smith v. Bray, 681 F. 3d 888, 897 (7th Cir. 2012)*………………………………………………19

*State of Illinois v. City of Chicago, Case No. 17-cv-6260 (N.D. ILL 2017)*……………………9,13

*Staub v Proctor Hospital, 131 S. Ct. 1186 (2011)*………………………………………………20

*Walker v. Weatherspoon, 900 F. 3d 354, 356 (7th Cir. 2018)*……………………………………12

**Other**

*Invisible Institute*. (2019, September 09). Citizens Police Data Project.

https://cpdp.co/ …………………………………………………………………………………6,9,10

## INTRODUCTION

Watkins pleads to this Court to consider the statement given by the Honorable Judge Chang in his Memorandum Opinion Order "the evidence is viewed in Watkins' favor" and that Appellant erred by not properly citing her evidence and facts to record to be easily located. However, in this Appellant Brief, Watkins has ensured that all facts and evidence are properly cited to record and easily accessible for this Honorable Seventh Circuit Court. (Docket p.120 p.1-2).

Appellee, City of Chicago ("Appellee" or the "City"), arguments defending its unlawful and discriminatory obtainment of the egregious CR, suspension and retaliation of Appellant, Jacqueline Watkins ("Watkins" or "Appellant"), consist of all too familiar pretextual explanations for its discriminatory actions. The City erroneously minimizes the detriment of the obtainment the false and egregious CR (Conduct Unbecoming/ Negligent to Duty) as not being an adverse action that impeded on Watkins' career, reputation, and promotional opportunities. The City also minimize similarities between Watkins and other similar situated accused White and Male officers and its disparate treatment of Watkins for violations of the same rules that Watkins was falsely accused of violating. The City attempts to cover the fact the assignment of the "burglary in progress" was assigned to a midnight shift Beat 2221(Male Whites) as Watkins Beat 2222 was enroute to get gas before checking off. However, upon Sgt. Higgins demand in a "nasty tone" to respond to the call of the "burglary in progress" Watkins immediately responded; thereby proof of no violation. Watkins pleads to this court to take notice that the alleged "Burglary in Progress" call absolutely did not require any paperwork, burglary, damage to property, trespass, or injury; thereby proving the obtainment of the CR was malicious, pretextual and discriminatory.

The City's argument that Watkins cannot establish her claim that similarly situated male and white officers were treated more favorably to Watkins, is erroneous. It must be noted that

former IAD Chief Juan Rivera held his leadership position over CRs from March 2009 until his retirement October 2015. The obtainment of the false and egregious CR was initiated September 2008 by Sgt. Higgins. The investigation of the false CR commenced two years later in 2010. Sgt. Higgins was allowed to retire "in good standing," November 2010 with an open CR filed for filing the false allegation and discrimination against Watkins. However, the City violated Watkins' rights by neglecting to open a separate CR against Higgins thereby hiding and covering up Sgt. Higgins discriminatory conduct and practices. The City also violated Watkins' rights by allowing Sgt. Higgins to retire in good standing without holding him accountable and to stand and answer for his actions as he was allowed to retire with another open civil rights violation CR #1022985 lodged against him by a Male Black Civilian filed January 2009 and closed sustained in August 2011 after Higgins retirement; thereby proving discriminatory practices by Higgins. (Docket. 103-7 pg. 5). Watkins was suspended for the false CR six years later in March 2014, thereby showing pretextual character and inference of suspicious timing and circumstantial evidence. The false and discriminatory CR was later reversed from Sustained to Not-Sustained in December 2015; with substantial facts and supporting evidence provided by Arbitrator George Roumell and the Chain of Command proving the CR is pretextual. Watkins found it imperative to inform this Court being found guilty of such egregious CR bears extreme discipline and adverse action up to being fired. The City's lack of timeliness to conclude the false CR caused Watkins tremendous emotional stress and damage to her career mobility.

## ARGUMENT

### A.    Watkins Established a Prima Facie Case of Discrimination.

The City argued the contrary, but Watkins evidence did wholly fit under McDonnell Douglas, a plaintiff must prove "that (1) she is a member of a protected class, (2) she performed

reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *David v. Board of Trustees of Community College District No. 508, 846 F.3d 216, 225 (7th Cir. 2017).*

The Statistical Data obtained from *Citizens Police Data Project* provided facts and evidence that the White and Male Officers that were similarly situated to Watkins were treated more favorably. As this Court has long recognized, "an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007).* The relevant inquiry is whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation. The plaintiff's evidence on the prima facie case need not be overwhelming or even destined to prevail; rather, the plaintiff need present only "some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." *Bellaver v. Quanex Corp., 200 F.3d 485, 493 (7th Cir. 2000).*

The City erroneously argues that Watkins presented statistical data that did not name similarly situated Male and White Officers that was treated more favorable; however, it is proven that Watkins did provide essential supporting statistical facts and evidence with names to prove Prima Facie for discrimination. Watkins did not write the names in her Appellant Brief of the White and Male officers treated more favorably in the 22nd District because there are too many names, but all the names are provided and in the record by an Exhibit (Docket 103-4 p.3-42).

Additional proven disparity of treatment is that Beat 2221 who was assigned the "burglary in progress," who is Male and White but was not singled out for response time or inquiry of any misconduct. This disparity of treatment was proven by Sgt. Higgins admission and statement that he knew the job was assigned to Beat 2221 but gave them the "benefit of the doubt" by stating "I knew they were still probably just coming out the station." (Docket 90-12 pg.10). This statement by Sgt. Higgins proves "bias" by Higgins assuming Watkins and her Partner whom are both Black Females were lazy and dodging work when in fact Watkins were in fact enroute to get gas as the job was assigned to a midnight shift beat car 2221; but immediately responded to the job upon Sgt. Higgins request. (Docket 90-12 p.10). Thus, proving the CR is pretext and discriminatory. As proven that it was near check off time for Watkins and she was enroute to get gas for her patrol vehicle when Beat 2221 was assigned the job. Watkins patrol vehicle was under a quarter of tank of a gas, and it is in violation to return a vehicle under a quarter tank of gas. (Docket 103-3 p.43) (Docket 90-4 p.33-34, 38-43, 56 & 137) & (Docket 90-4 p.33-43, 56). This Court should be made aware that Watkins got gas after assisting Sgt. Higgins and the assigned Beat 2221. Watkins and her partner got off work late after assisting Sgt. Higgins and the assigned Beat 2221.

Watkins pleads to this Court to also consider her Partner Harriet White statements within her deposition as it correlates the same facts and evidence of discrimination, pretext, disparity of treatment, retaliation and the emotional effects and career damage by such egregious CR. (Docket 90-5 p1-97). Sgt. Higgins disparity of assuming negligence without investigation against Watkins and her partner compared to the assigned Beat 2221 (Male Whites) proves additional evidence of Prima Facie. It is proven that Sgt. Higgins obtainment of the CR was biased and in violation of department policies as he admitted "I do not remember if I actually spoke to them after because I was busy" before getting the CR. (Docket 90-12 p.11). It is CPD required administrative policy

that all Supervisors must conduct an investigation with all Witnesses to ensure validity and truthfulness before obtaining a CR and Higgins failed to conduct an investigation by his own admission and shows violation of progressive discipline and malicious conduct. (Docket 103-3 p.2,71,91-92,98,104).

This Honorable Court should also be made aware that it not a requirement to respond to a job unless it is assigned to an Officers' specific beat. The City attempts to deceive the Court with a lie that all Officers must respond to all dispatched jobs; this is untrue proven in CPD directives that dispatchers assign Jobs, but Sgt. Higgins took it upon himself to demand Watkins to also respond to the job. (Docket 103-3 p.44-48). It is only required for Officers to respond to a specific assignment to an Officers' beat; as Sgt. Higgins admitted that Watkins immediately responded upon his request. (Docket 90-12 p.7). It should be also noted that Watkins has proven that the City's stated reason for the CR and suspension is pretext to hide discrimination. *McDonnell Douglas, 411 U. S. at 802-04.*

The City argues Watkins did not present evidence of discrimination, but Watkins met the McDonnell-Douglas requirement of culling relevant evidence "is just one way that a plaintiff can navigate her way to a jury in a discrimination case." *Purtue v. Wisconsin Department of Corrections, 963 F.3d 598, 602 (7th Cir. 2020)*. Watkins has presented substantial evidence that the City violated Title VII by the obtainment of the CR which was caused due to her race and sex which caused the adverse action (Suspension/CR). *Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016)*.

8

**B.     The District Court and City abused its discretion by denying Watkins'
statistical facts and evidence to carry the burden of proof of disparity of
treatment based on race and gender**.

The District court abused its discretion by denying Statistical Data collected from the
*Citizens Police Data Project* that was used to draft the Chicago Police Consent Decree. (Docket
103-4) & (Docket 116-2).  The Chicago Police Consent decree was developed because of found
evidence that the Chicago Police Department followed a long history of discriminatory pattern of
practices including some of the same issues brought under Watkins' lawsuit for pattern of practice
of discrimination, disparity concerning promotions, code of silence, lack of transparency, and
discipline disparities among many other discriminatory practices. *State of Illinois v. City of
Chicago, Case No. 17-cv-6260 (N.D. ILL 2017)*.  The fact that the Consent decree utilized the
statistical data obtained from the same source *Citizens Police Data Project* provides adequate and
reliable evidence that the Statistical data obtained by Watkins are legal binding, factual and
truthful.  The City argued that Watkins' statistics obtained from *CPDP database* was not reliable
or truthful and failed to provide reliable identity of similar situated Officers who received better
treatment.  Thus, Watkins provided names and statistical data of White and Male similar situated
Officers receiving favorable treatment over Watkins. (Docket103-4) & (Docket 116).  Watkins
provided statistical data to prove discrimination though she was not in violation any rules or
directives and the CR was based on a lie.

The production of the Statistical Data retrieved from the *Citizens Police Data Project*
further established the disparate treatment of Watkins for the same or similar conduct of White
and Male Officers. Under the circumstances, the district court should have allowed the data as
substantial weighted evidence as critical facts and evidence.  Watkins pleads to this court to take
notice that the Office of the State Attorney General, Lisa Madigan stated in memorandum to

develop the Chicago police consent decree; "the Data collected by the *Citizens Police Data Project* shows that from 2011 to 2015, 97% of more than 28,500 citizen complaints resulted in no officer being punished. The data also shows that over the past five years, white complainants were almost seven times more likely to have their police misconduct complaints sustained than African-Americans, even though African-Americans filed three times more complaints against police officers." (Docket 116-2 p.1-3). Thus, this statement by former Attorney General Lisa Madigan and the fact the Chicago Police Department is held accountable under a legal binding consent decree by means of this *CPDP database* the same database Watkins used proves the statistical database truthful and reliable.

Watkins pleads to the court to take notice that the City of Chicago has a proven history of blocking statical evidence showing disparities among other relevant evidence for discovery. *Foggey v. City of Chi., No. 16 CV 10963 (N.D. Ill. Jan. 13, 2020)* & (Docket 103-3 p.93-94). The denial of statistical data resulted in substantial prejudice to Watkins. *Patterson v. Avery Dennison Corp., 281 F.3d 676, 679 (7th Cir. 2002)*.

C.     **The District Court erred by granting Summary Judgment as to Watkins' retaliation claim where the City increased penalty and suspended Watkins after Watkins submitted a discrimination complaint.**

It is undisputed that Watkins was suspended after engaging in protected activity. Like most employers, the City would never admit that it suspended Watkins because she filed charges of discrimination. However, causation may be established by circumstantial evidence "that would permit the same inference [of retaliation] without the employer's admission." *Milligan v. Board of Trustees of Southern Illinois University, 686 F.3d 378, 388 (7th Cir. 2012) quoting Coleman v. Donahoe, 667 F.3d 835, 860 (7th Cir. 2012)*. In addition to suspicious timing "and other bits and pieces from which an inference of causation might be drawn", circumstantial evidence may consist

10

of "'evidence that . . . the employer's justification [for the adverse action was] pretextual."
*Milligan*, 686 F.3d at 389, *quoting Silverman v. Bd. Of Educ. Of City of Chicago, 637 F.3d 729, 734 (7th Cir. 2011)*.

Viewing the evidence in a light most favorable to Watkins, there is an inference of causation. In addition to the timing of Watkins' suspension after she filed discrimination charges, the evidence contradicts the City's justification for suspending Watkins. The City's finding that Watkins failed to perform any duty is untrue. Watkins immediately responded to the "burglary in progress upon being dispatched. (Docket 90-12 p.7). Further, contrary to the City's contention, it was on notice of Watkins discrimination charges against it immediately in 2008 upon Watkins being served with the CR. The City's attempt to deny or distance itself from Watkins timely complaint of discrimination placed internally to IAD and IDHR argument is implausible. In short, Watkins' charge of discrimination was also filed with the IDHR in 2008 but IDHR refused to continue through with the charge and informed Watkins to return upon being disciplined. Watkins immediately returned to IDHR in 2014 upon being suspended. Despite evidence to the contrary, IDHR elected to agree with City findings. This provides fact the City hid evidence that the Chain of Command classified the CR Not-Sustained, with inconsistencies and untrue. This fact coupled with the evidence contradicting the City's proffered reasons for suspending Watkins raises an inference of retaliation. To prove retaliation, a plaintiff "must adduce evidence to establish a causal link between [her] protected activity and the adverse action." *Khungar v. Access Community Health Network, 985 F.3d 565, 578 (7th Cir. 2021)*.

Watkins has proven retaliation on several levels. IAD investigator Sgt. Kane excoriated Watkins by yelling at Watkins "how you dare defame his reputation with a discrimination charge." Thus, proving pretext and retaliation as she typed her own notes, and the investigation was not

11

recorded. (Docket 44 p.4) & (Docket 90-4 p.89, 93). Watkins immediately and continuously reported discrimination but the City refused to open a discrimination CR against Sgt. Higgins. The City's actions violated Watkins' equal protection rights and the City is liable under *Monell v. Dep't of Soc. Servs. of the City of New York, 426 U.S. 658 (1978)*. The City was mandated to open, investigate and obtain a separate EEOC CR against Sgt. Higgins. (Docket 90-11 p.8 ¶23). The City violated 42 U.S. Code §1983 procedural due process right of the first, fifth and fourteenth amendments of the United States Constitution by not opening Watkins' discrimination complaint. (Docket 90-11 p.42, 62, 77 &92). The City continuously argued that Watkins' complaint of discrimination was untimely and hid the fact that Watkins immediately and continuously complained of discrimination, but the City failed to open a discrimination complaint. *Walker v. Weatherspoon, 900 F. 3d 354, 356 (7th Cir. 2018)*. It is proven in memorandum that Watkins immediately complained of discrimination upon being served the false CR. (Docket 90-11 p.55-59). Former Chief of Internal Affairs Juan Rivera stated in his declaration "Sgt. Kane found there was insufficient evidence to serve Sgt. Higgins with allegations that he had acted in a discriminatory manner or that he had lied in his allegations against the accused officers." (Docket 90-11 p.8). Thus, this statement by Juan Rivera is evidence that Appellee violated Watkins equal rights by never opening an EEOC CR against Sgt. Higgins. According to Chicago Police Department directive, policy, and Federal laws when a Supervisor receives a Discrimination complaint a CR and EEOC complaint must be obtained and reference the original complaint. (Docket 103-3 p.4, 57). Thus, here again the City denied Watkins equal rights by refusing to open her discrimination complaint against Sgt. Higgins.

**D.     The District Court's opinion, without explanation that Watkins' arguments of the suspension and obtainment of the false and egregious CR being Adverse Action that impeded on Watkins' career mobility, work reputation and promotional opportunities.**

Watkins has proven adverse action as she was performing her job satisfactorily. *Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)*. The CR further caused adverse action by lack of promotion, retaliation, loss of a more distinguished title, loss of benefits, diminished job responsibilities and career ending performance review. *Lewis v. City of Chicago, 496 F.3d 645, 653 (7th Cir. 2007)* & *Molnar v. Booth, 229 F.3d 593 (7th Cir. 2000)*. Watkins hold two master' degrees (MBA & Psychology), several credit hours toward a PhD in community psychology and exceptional emotional intelligence but sat at entry level patrol for 18 years that only require a High School diploma. Watkins advanced her education with the goal of advancement but got her nowhere but student loan debt and stuck at entry level patrol. Watkins disciplinary record and resume carries the burden of proof that exemplifies her superior qualifications and the fact that she never had a sustained CR can also show pretext. *Fischer v. Avanade, Inc., 519 F.3d 393, 404 (7th Cir. 2008)*. The CR that was initiated against Watkins is egregious and was placed in her disciplinary record, but the City argues and invalidated Watkins by calling the CR "a mere inconvenience." All meritorious promotions require consideration of disciplinary record and references from Supervisors. (Docket 103-3 p.14-16). The mere obtainment of this CR obtained by a Supervisor doomed Watkins career mobility and opportunities. As such a CR carry so much detriment that Watkins was prevented from moving up the ranks as she could have been fired. Watkins ask the City to honor original settlement request as retribution and promote Watkins to the position of Deputy Chief of Diversity and Inclusion, which is a required position to be fulfilled within the Consent Decree. *State of Illinois v. City of Chicago*, Case No. 17-cv-6260 (N.D. ILL 2017).

It was further explained that the CR by material evidence in *O'Sullivan vs. City of Chicago* in which Lieutenant Lilly Crump-Hales testified that "CR records were reviewed in connection with promotions." The CR created a "stigma" that impeded on Watkins promotional opportunities by preventing Plaintiff from a higher pay scale that would place her in a higher pension upon retirement. (Docket 90-5 p.15 ¶5-24 &p.46 ¶ 13-15). It is proven with material evidence that the CR damaged Watkins' career in *O'Sullivan vs. City of Chicago* in that the jury "did properly conclude that CRs were significant and were an actionable form of retaliation, the inevitable and intended of which was to harm the plaintiffs." Here, it was proven suspension without pay satisfied the materially adverse employment action test. It was also found that "CRs destroyed any chances for promotion, regardless of the good faith of the Board." The jury was entitled to conclude that CRs were pretextual and retaliatory. Here, it was proven that Supervisors did not take out CRs against Officers unless the event was egregious, or they intended to harass or "get" the officer. *O'Sullivan v. City of Chicago, 01 C 9856 (N.D. Ill. 2007)*. An employment action is materially adverse if it would deter a reasonable worker from complaining of discrimination. *Burlington Northern v. White, 126 S. Ct. 2405 (2006)*.

Watkins has proven that her complaint of discrimination would deter Officers from filing a discrimination complaint as Watkins sat at with the bottom of entry level patrol for over 18 years, while holding two masters' degrees. The deterrer of complaining of discrimination is so strong that Watkins applied for several lateral and promotional opportunities but never even received a return call for an interview. Since the inception of the CR, Watkins dealt with the embarrassment and innuendos implying she was "always playing the victim" and "race card" and it is still ongoing. Watkins would like to make this Court aware that in spite of Watkins winning the CR arbitration proving the CR a lie/not-sustained that former IAD Chief Juan Rivera whom sat on the Merit Board

alongside the Superintendent of Police believed Watkins was Negligent to Duty/Conduct Unbecoming even after the closing of the CR. Rivera statements "I agreed in June 2012, and still agree with the investigator's original finding of sustained." (Docket 90-11 p.8-9). This statement by Rivera proves that Watkins promotional opportunities were "doomed" with being accused of such egregious allegation and the fact Officers were fired for being accused of the same CR allegation. Thus, furtherance of "doom" because Rivera being IAD Chief and the Superintendent having final determination over all promotions. (Docket 90-13 p.15). The Superintendent of Police makes the ultimate determination of who is to be promoted. *Deloughery v. City of Chicago, 422 F. 3d 611, 614 (7th Cir. 2005)*.

Watkins has provided evidence that though she does not score high on promotional test that she indeed passed all promotional test that placed her eligible for Merit promotions. Watkins has provided evidence that White and Male Officers that scored lower on the promotional exams, less education and more extensive disciplinarian history were meritoriously promoted over Watkins, which proves the egregious CR obtained by Higgins is discriminatory, malicious intent and impeded on Watkins' career reputation and promotional opportunities. (Docket 103-6 p,2-80). Watkins pleads to this Court to weigh heavily and consider this promotional list data with names and scores as evidence as to receive a Meritorious promotion requires an exemplary disciplinary record and reputation for black females; as references from direct Supervisors are required and must be endorsed by the District Commander and the final promotional decision is by the Superintendent of Police. Watkins was suspended by Superintendent McCarthy, supported, and encouraged by the former Chief of Internal of Internal Affairs Juan Rivera. (Docket 90-4 p.79-83,114-117 & 125-143) & (Docket 90-10 p.3-4). Watkins, again, pleads to this Court to take notice it is extremely rare for a Supervisor to initiate a CR against an Officer unless egregious.

CRs initiated by Supervisors or other Officers are weighted heavier verse CRs initiated by Civilians. CRs are only obtained for egregious behavior as there are milder approaches to discipline according to CPD progressive discipline policies, which include verbal or written warning, admonishment, violation noted or spar as CRs are extreme and a "permanent stain" on Officers' record, as this false CR is a permanent stain on Watkins' record. (Docket 103-3 p.92,96,98 &104).

### E. The City shifting "non-discriminatory justifications" and seven-year timing regarding the closure of the CR is furtherance and proof of the City inconsistency and pretext.

Watkins has provided circumstantial evidence which consists of "suspicious timing." Timing is very important, as the amount of time that passed between the protected activity and the adverse employment action can be probative of the retaliatory motive. *Magyar v. St. Joseph Regional Medical Center, 544 F.3d 766, 772 (7th Cir.2008)*. The CR was initiated in September 2008, the investigation began two years later in 2010, Watkins was suspended in 2014 and finally the CR was reversed from sustained to not-sustained by Arbitration in December 2015. (Docket 1 p.17-20), (Docket 90-9 p.2-6) & (Docket 90-11 p.27-33). The City continued shifting its justification of the CR; originally the CR alleged Watkins "failed to respond to a burglary in progress." Employer's shifting rationales are evidence of pretext. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712 (7th Cir. 2005). Upon notification of the CR Watkins immediately submitted a To-From report memorandum that the CR was false and discriminatory. Two years later in 2010 investigative sergeant Kane changed the CR to a vague allegation "failed to properly respond" and refused to tell Watkins what she did improper. Furtherance of suspicious timing is exemplified in 2014 when the CR allegation was changed a third time to "failed to timely respond/inattentive to Duty." (Docket 90-11 p.77, 92 &101-102). Due to the fact the CR allegation was changed three

times over a seven-year span provides fact and evidence proving pretext to hide discrimination. *McDonnell Douglass*, 411 U.S. at 802-804; *Burdine, 450 U.S. at 252-56.*

Timing, lack of progressive discipline and increasing the punishment of the CR after Watkins complained that the CR is discriminatory proves retaliation. The record reflects and provide evidence of retaliation and suspicious timing in that the CR penalty was increased from "No Penalty" and later on November 21, 2011 increased to a 2 day Suspension. (Docket 90-11 p.32-33). A reprimand was not allowed to be increased to more serious punishment at a later time. *DPS, State Police v. Rigby, 401 2d 1017 (1981).* A plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action," which means that "the adverse action would not have happened without the [protected] activity." *Mollet v. City of Greenfield, 926 F.3d 894, 897 (7th Cir. 2019).* It was found that prolonging discipline is unreasonable and against policy as it is required that discipline should occur within 30 days for simple allegations. *EEOC v. Indiana Bell Telephone Company, Inc. Ameritech Corporation, 256 F.3d 516 (7th Cir 2001).* It should be noted, admission by the City in their Appellee Brief that the CR was obtained September 8, 2008 and Watkins was served and made aware of the CR on September 25, 2008 and suspended March 2014; this further prove malicious intent as the purpose of discipline to immediately admonish to inform and ensure the behavior do not occur again. Here, the Seventh Circuit ruling in the Ameritech company provides evidence of pretext and more reason to remand this case for trial.

Watkins pleads to this Honorable Court to listen to the audio dispatch tape which would clearly provide evidence that IAD Sgt. Kane investigation is a lie and attempt to hide that the truth that Watkins immediately answered Sgt. Higgins demand to respond via the dispatcher call. Sgt. Kane falsely reported in her investigation that "Higgins called on them to respond after dispatch

had already called their specific beat." (Docket 90-11 p.6-7). This documented statement by Sgt.

Kane is a lie and the job was specifically assigned to a midnight shift Beat 2221, as Sgt. Higgins

admitted that he "knew the job was assigned to a midnight car." (Docket 90-12 p.10). Here, this

proves that Higgins singled out Watkins and her partner (i.e., for discipline) based on a prohibited

factor based on race and sex. *Curry v. Menard, Inc., 270 F.3d 473 (7th Cir. 2001).*

> **F.** **The Court erred when it failed to view the findings and evidence of all investigative witnesses [Chain of Command, Sgt. Derrick Shinn & Fraternal Order Police Arbitrator George Roumell] that documented the egregious CR as Pretext.**

Watkins has provided proof of pretext. Proof that the defendant's asserted reason is untrue

permits, but may not require, a finding of discrimination. *Reeves v. Sanderson Plumbing Prods,*

*Inc., 530 U.S. 133 (2000)*; *Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1123 (7th Cir.*

*1994)*. If the employer's stated reason is not the true reason, the case cannot be decided on

summary judgment. *Forrester v. Rauland-Borg Corp, 453 F.3d 416 (7th Cir. 2006)*.

To prove pretext, plaintiff must present evidence that impeaches the employer's stated reason for

its employment decision. Plaintiff generally must show that the employer did not sincerely believe

its proffered reason. *Humphries v. CBOCS West, Inc., 474 F. 3d 387, 407 (7th Cir. 2007)*. Watkins

has presented evidence that the CR was a "lie" or proper term pretext. Evidence proving pretext

was presented on several levels. The most valuable piece of evidence proving the CR is pretext is

found in labor arbitrator George T. Roumell Jr., summary opinion binding award dated; December

28, 2015. Within the arbitration binding award, pretext was proven by the Command Channel

Review consisting of three high ranking investigating officials: Chief Eugene Williams, Chief Al

Wysinger and Deputy Chief Dana Alexander. The Chain of Command officials all classified the

CR as false/not-sustained with inconsistencies of statements by Sgt. Higgins and Sgt. Kane.

Arbitrator Roumell documented his findings that the CR is pretext and concurred with the

Command Channel Review that the CR is pretext. The initial investigator Sgt. Derrick Shinn also did not find any violations, negligence or improper action by Watkins and transferred the CR investigation to IAD to determine if the CR was caused due to Sgt. Higgins discriminatory practices. (Docket 90-9 p.2-6) & (Docket 90-11 p.27-33).

The City argues that this lawsuit did not fit the Cat's Paw Theory. However, this lawsuit perfectly fit the Seventh Circuit's "Cat's Paw" theory with supporting evidence provided throughout former IAD Chief Juan Rivera declaration, exhibits and supporting documents. (Docket 90-11). Former Superintendent Garry McCarthy was a Cat's Paw, which is to say an unknowing tool of Rivera and Kane. *Smith v. Bray, 681 F. 3d 888, 897 (7th Cir. 2012).* Superintendent McCarthy based his decision to suspend Watkins on Juan Rivera and Sgt. Kane wish to retaliate against Appellant and duped the former Superintendent McCarthy into taking adverse action against Watkins and suspend her. *Robinson V. Perales, 894 F.3d 818, 832 (7th Cir. 2018).* Rivera unwittingly manipulated the Superintendent to suspend Watkins by not sharing the Command Channel Review investigation and findings. It is proven that Juan Rivera did not investigate the CR but based his findings without fact or evidence but by animus. There are no investigative notes by Rivera required by CPD policy and proven in Exhibit C. (Docket 90-11 p.26-33). However, within the City's Appellee Brief self-admitted statement that "Chief Rivera recommended a one-day suspension for Officer Watkins and a reprimand for Officer White. R. 90-11 at 9 ¶ 25, 39." This self-admission by the City proves animus for retaliation Rivera as evidenced by the imbalance of discipline.

Former superintendent McCarthy was the formal decision-maker in the process of making an adverse employment decision with no discriminatory intent but was contaminated by the information received from front-line biased Supervisors (Juan Rivera, Sgt. Kane & Sgt. Higgins)

who harbored discriminatory animus against the affected employee. *Staub v Proctor Hospital, 131 S. Ct. 1186 (2011)*. Cat's Paw theory is clearly articulated here and proven in that Superintendent McCarthy (decision maker) failed to verify that prior measures or recommended disciplinary actions are justified, properly supported, and based on legitimate nondiscriminatory reasons. Decision-makers should conduct independent investigations prior to taking adverse employment actions. A proper independent inquiry becomes even more transcendental for ultimate employment decisions and in situations in which a Supervisor's actual or potential bias has been brought to the decision-maker's attention.   The Superintendent failed to investigate and obtain sufficient information to support a conclusion that Rivera (non-decision maker) decision to sustain the CR was not biased.   Superintendent McCarthy clearly fit the Cat's Paw theory in that he merely rubberstamped Juan Rivera's decision without confronting and questioning the alleged biased (non-decision maker) supervisors (Juan Rivera, Sgt. Kane and Sgt. Higgins) lies and issues under consideration. Sgt. Higgins' discrimination was the proximate cause of an employment decision and former Superintendent McCarthy was totally dependent on Juan Rivera to supply the information on which to base his suspension decision. *Brewer v. Bd. Of Trs. Of Univ. of Ill., 479 F. 3d 908, 918 (7th Cir. 2007)*. The fact that Rivera had no documentation supporting that the CR is truthful/sustained provides evidence to a reasonable jury could see that the Command Channel Review findings as evidence while rejecting Rivera's finding of sustained a tissue of lies (the polite term is pretext). Here, again Watkins pleads to this court to disturb the district court's discretion in this case in which the City presented "multiple grounds offered by the defendant . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Russell v. Acme-Evans Co., 51 F.3d 64, 69-70 (7th Cir. 1995)*.

The District court erred by not considering the power of "stray remarks" was given some new life after the Supreme Court. *Reeves v. Sanderson Plumbing, Inc.*, *530 U.S. 133 (2000)*. The City argued that Watkins evidence of discriminatory stray remarks did not create a genuine issue whether Higgins initiated the CR for discriminatory reasons. Sgt. Higgins discriminatory stray remarks heard and reported by Watkins' partner Officer Harriet White further proves discriminatory animus. Watkins did not document Sgt. Higgins discriminatory stray remarks because that was routine behavior for Higgins. Watkins, again, pleads to this Honorable Court to consider White's deposition identifying discriminatory stray remarks by Sgt. Higgins which includes: "we got a don't shoot my mama daddy drama mission, they want to grow up in the zoo, we got to go over here to stop these people from killing each other over at the zoo, let's save my daddy baby mama mission over here at the zoo, don't shoot my baby daddy mama mission at the zoo." (Docket 90-5 p.20-21 & 98-99). It should be noted that all these discriminatory stray remarks by Sgt. Higgins and reported by Officer White are referring to a low-income housing complex where all blacks reside. Watkins' evidence of Higgins' stray remarks proves animus against black females provides Watkins' burden of evidence of discrimination as his remarks showed bias as comparing black females to animals.

White's deposition, wholly correlate Watkins' complaint that the CR is false, discriminatory, retaliatory, created a hostile work environment and career impetuous. (Docket 90-5 p.1-197). It should be noted that the hostile work environment continues as just recently Watkins was yelled at "you are always playing the victim" due to her persistence of fighting this CR, as Watkins request that the City expunge the CR off her record. The continuance of hostile work environment includes innuendos towards Watkins as playing the "race card, victim, hostile and troublemaker," which causes her undue emotional distress. The City tried to hide evidence

presented in White's Deposition, as it should be noted that White's statute of filing discrimination charges was tolled out and the CR remain sustained on her record and her loss of pay never restored. (Docket 103-5 p.9). The City's approach to Watkins' experience fighting this false and egregious CR placed her in the cycle of systemic racism.

## CONCLUSION

The ultimate question in every employment discrimination case…is whether the plaintiff was the victim of intentional discrimination." *Reeves, 530 U.S. at 153, 120 S. Ct. 2097*. A court is to examine "the entire record to determine whether the plaintiff would satisfy his "ultimate burden of persuading the trier of fact the defendant intentionally discriminated against the plaintiff," *Schnabel v. Abramson, 232 F, 3d 83, 90 (2d Cir. 2000)* quoting *Reeves, 120 S. Ct. at 2106)*. Because Watkins produced evidence such that a reasonable factfinder could conclude that the City's proffered reasons are false, and raised an inference of racial discrimination, summary judgment for the City was more than improper; it was unjust, and severely disadvantaged and injured her.

Watkins respectfully requests that this Honorable Court reverse the District Court's judgment on Count I, 42 U.S.C. § 1981- Race Discrimination, Count II, Section 1983-Equal Protection Clause, Race Discrimination; Count III, Race Discrimination-Title VII and Count VI, Intentional Infliction of Emotional Distress charges and Retaliation-Title VII.

For the foregoing reasons and those set forth in Watkins' brief on appeal, the district court's order granting summary judgment should be reversed and this case remanded for further proceedings.

/s/ Jacqueline A. Watkins
Jacqueline A. Watkins
Pro Se Appellant-Plaintiff
1727 W. 107th Street
Chicago, IL 60643
(773) 562-0167

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned Plaintiff-Appellant, Jacqueline Watkins, pro se furnishes the following in compliance with F.R.C.P. 32(a)(7):

I hereby certify that this brief conforms to the rules in F.R.A.P. Rule 32(a)(7) for a brief produced with a 12-point Times New Roman Font. The length of this brief is 6,913 words.

Dated: March 11, 2021

/s/ Jacqueline A. Watkins
Jacqueline A. Watkins
Pro Se Appellant-Plaintiff
1727 W. 107th Street
Chicago, IL 60643
(773) 562-0167

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, under penalty of perjury, certifies that on March 11, 2021, Plaintiff-Appellant Jacqueline Watkins' Reply Brief was filed with the Clerk of the Court using the ECF System which will provide electronic copies to counsel of record.

<u>/s/ Jacqueline A. Watkins</u>
Jacqueline A. Watkins
Pro Se Appellant-Plaintiff
1727 W. 107th Street
Chicago, IL 60643
(773) 562-0167